## THE VENEZUELA.

### INSURANCE CO. OF NORTH AMERICA et al. v. THE VENEZUELA.

### MERRITT et al. v. SAME.

#### (District Court, S. D. New York. May 14, 1892.)

SALVAGE—STRANDING—MERITS OF DIFFERENT SALVORS—SUBORDINATE HELPERS.

The steamship Venezuela went ashore on Brigantine shoals, off the coast of New Jersey. Her agents in New York employed the libelants Merritt et al. to float her, and several steamers were at once dispatched by the latter with wrecking appliances. Prior to their arrival at the ship, a wrecking steamer and lighter belonging to the libelants the Insurance Company of North America et al. had arrived at the shoals, and had offered their services, which were declined by the master of the Venezuela on the ground that the matter had been referred to the agents in New York. On the arrival of the Merritt boats the services of the vessels of the other libelants were accepted by the master in charge of the Merritt boats, but in no other way than as assisting him, and as subordinates to him, and in his employment. The ship was taken off by the united efforts of all the libelants. Separate libels were thereupon filed by the salvors, to recover compensation for the service. The evidence showed that the control of the service rested entirely with the Merritts; also that their appliances were two or three times greater than those of the other libelants. The value of the Venezuela and her cargo was $900,000. Her owners did not deny the salvage service, and offered $40,000 as total salvage, which was agreed to. *Held*, that the libel of the insurance company, though that company acted as a subordinate helper only, could not be dismissed; that the only question remaining was as to the shares of the different libelants; and that Merritt & Co. should receive $33,500, and the other libelants $6,500.

In Admiralty. Libel for salvage. Decree for libelants.
*George A. Black*, for Insurance Company of North America.
*Benedict & Benedict*, for I. J. Merritt and others.
*Coudert Bros.*, for the Venezuela.

BROWN, District Judge. On the 5th of February, 1892, the Venezuela, a steamship of 2,900 tons, went ashore on Brigantine shoals, off the coast of New Jersey. The value of the steamship, cargo and freight, was upwards of $900,000. She was got off between 2 and 3 o'clock A. M. of February 7th, through the united assistance of the above-named libelants as salvors, all of whom are engaged in that business. The above libels were filed to recover salvage compensation. The answer to each libel admits the rendering of a salvage service, but denies some of the matters stated in the libels, and alleges that the ship was got off mainly by the use of her own engine. The causes were heard together. At the commencement of the trial the defendants offered to allow decrees for $40,000 for the whole service, which has been agreed to by the libelants as a fair compensation for the whole work; and the trial proceeded with reference to the respective rights and shares of the two libelants.

The evidence shows that at about 4 o'clock in the afternoon of February 5th, a telegram was received by the agents of the Venezuela in New York, stating that the steamship was aground; that the Merritt Wrecking Company was on the same afternoon employed by them to get the

vessel off, and the whole charge of the work was put in that company's hands. On the same evening that company dispatched to Brigantine shoals the tug Buckley and the schooner Rapidan, which arrived there at about daylight on the following morning, with Capt. Chittenden as the representative of the company in charge of the work, accompanied by one of the agents of the Venezuela. On the afternoon of the 5th, the company telegraphed to Norfolk, directing their tug Rescue and barge Seymour, fully equipped for wrecking purposes, to go to Brigantine shoals. Two other vessels from New York were also engaged by the Merritt Company, and ordered thither on the 6th.

The steam lighter Tamesi and the wrecking steamer North America, belonging to the other libelants, receiving information on the afternoon of the 5th that the steamship was ashore, also repaired to Brigantine shoals. The Tamesi, proceeding from Somer's point, arrived there at about 6 P. M., and offered her assistance to the master of the Venezuela, which was declined by him on the ground that the matter had been referred to the agents of the ship in New York. The North America, from Lewes, Del., delayed by a thick snowstorm, arrived at about half past 1 A. M. of the 6th, and lay by until morning.

Capt. Chittenden with Mr. Dallas, on the arrival of the Buckley and the Rapidan, were put on board the Venezuela by Capt. Townsend of the Tamesi, with the surfboat of the latter. The Insurance Company and the Atlantic & Gulf Wrecking Company acted together. The evidence leaves no doubt that the entire charge of the undertaking to get the ship afloat was given both by the agents and by the captain of the Venezuela to the Merritt Company, and to Capt. Chittenden acting in its behalf; and that the services of the Tamesi and North America were accepted by Capt. Chittenden in no other way than as assisting him, and as subordinate to him and in his employment. Notwithstanding some difference in the testimony, I cannot find that those vessels took part as independent salvors, or through any employment or acceptance of them as such by the master of the Venezuela.

Upon this ground it is claimed on behalf of the Merritt Company that the other libel should be dismissed, as not rightfully filed. The pleadings, however, and the attitude of the parties are not such, I think, as to make that a proper disposition of the cause. The other libelants as helpers in the salvage service, though subordinate to the Merritt Company and in its employment, might have been joined as co-libelants in the libel of the Merritt Company as any other of their employes might have been joined, such as master and crew, who are often individually joined as co-libelants with the owners in such a cause. In the present case the other libelants filed a separate libel, because they claimed the *status* of independent salvors, instead of being mere employes of the Merritt Company. The owners of the Venezuela in their answer to that libel have not denied that *status*, nor their rendition of salvage aid; nor have they objected to the separate libel; and the Merritt Company have not intervened in that libel to contest it. The latter company have simply filed their own libel for salvage service, alleging that the Tamesi and

the North America were employed by them for such compensation as should be agreed on between the owners of said vessels and Capt. Israel J. Merritt, one of the libelants. Under such pleadings, although the proofs, as I find, sustain the latter allegations, yet inasmuch as the Tamesi and the North America have a *lien* for their salvage services, which the owners of the Venezuela do not deny, I have only to fix the amount which upon the proofs should be allowed to them out of the whole sum agreed on; and in fixing that amount the relation of the parties, as disclosed by the evidence, is very material.

The principal part of the allowance should, I am satisfied, be awarded to the Merritt Company, not merely because they had by far the most vessels, men, and means involved in the enterprise, but also because they were the principals to whom the whole work was assigned, and who had the entire charge and responsibility of it. The services of the other two boats were rejected by the Venezuela, as independent salvors, and were only accepted afterwards by Capt. Chittenden as helpers to him for particular uses in the work of his company. The Merritt Company is one of the largest and most successful in such operations; it had abundant means for the work. It had ordered to the shoals men, vessels, and appliances of all kinds in abundance for getting the steamship off speedily. The North America and the Tamesi had no authority to take any part in the enterprise, except in the employ of Capt. Chittenden, for such work as he might assign them, and for so long only as he might desire. Their services were not really necessary; because other sufficient means already ordered by the Merritt Company would shortly arrive.

But it was a prudent act, considering the possibility of a change of weather, and the desirability of getting the vessel off as soon as possible, for Capt. Chittenden to make use of the two other vessels present, at least until the rest of his own forces should arrive; and it was at the same time considerate and liberal towards those two vessels, although they had come thither without orders or request, to give them some recognition and employment in the work. It is manifest, however, that in thus voluntarily taking them into his service,—the North America to pull on a hawser ahead of the steamer, and the Tamesi to take off about 1,800 bags of coffee, in addition to what was taken by the Rapidan, in order to lighten the vessel a little, for a compensation to be fixed by Mr. Merritt himself,—it was not the intention of Capt. Chittenden to admit those vessels to share in the work on the basis of independent salvors or to surrender in the slightest degree the position of the Merritt Company as the principals in the undertaking, and as such entitled chiefly to its emoluments. They were to be paid upon the basis of subordinate helpers, employed for particular uses only; the North America to give a pull at the times ordered; the Tamesi to lighter a small part of the cargo to New York in tow of the Buckley. Neither skill, nor judgment, as salvors, was required or expected of them, and they incurred no responsibility. The skill, the judgment, the direction, the management, and the responsibility of the work as a whole, all lay

v.50f.no.8—39

with the Merritt Company. To treat those vessels, therefore, as partners with the Merritt Company, or as standing on the same basis with that company as independent salvors, instead of mere subordinates, employed for particular and limited uses only, would be plainly unjust to the Merritt Company, whose business the whole work was, and would do violence to the letter and spirit of the agreement between them. On the next day the services of other tugs, offered at cheap rates, were declined.

The conduct of the work itself was in plain conformity with this view. Capt. Chittenden directed everything; the examination of the ground by soundings; the determination in which direction it was best to move; the location of the anchor and the purchases, and the arrangement of the cables; the unloading of part of the cargo; and the methods and times of hauling on the ship. In all these things the other vessels took no part. As respects the direction in which to move, they expressed a contrary opinion; but the speedy success of Capt. Chittenden's plan fully justified his judgment and skill.

The suggestion that the anchor and cable were laid broadly off the line of movement is not entitled to credit; nor that the anchor finally "came home," and gave the great cable no efficient hold. The main reliance was upon the steady and continuous tension of the immense 15-inch cable of the Merritt Company, three times the strength of the North America's hawser. Under the steady strain and pressure of such cables, the sand gradually yields a pathway for the vessel. The midday tide on the 6th was not as high as usual; it was not expected that the vessel would come off then; but everything was then adjusted; the preliminary trials were made; the strain was put on the anchor, and it was brought to a firm hold; all the stretch and slack were taken out of the cable; and when in the higher midnight tide the full power of the steamer herself, and of the vast cable and anchor, and the hawsers of the North America and the Buckley were all applied, the ship came speedily afloat.

The outfit provided by the Merritt Company for the work consisted of 6 vessels and 76 men, including the Lovett and Wyman, dispatched on the 6th. The outfit of the other libelants was 2 vessels and 29 men. The value of the vessels and materials of the former was about $65,000; of the latter, about $40,000; but of the latter the North America only, worth $25,000, was used in hauling off the ship, the Tamesi being employed as a lighter only, and towed with her own cables by the Buckley. The whole time occupied both at the shoals and in going and returning was for the vessels of the Merritt Company equal to a little over 13 days, including also going back for the cables and anchor that were slipped when the Venezuela went afloat. The time of the Tamesi and North America, including going and returning, was about four days. The expenditures of the Merritt Company were about $3,333; those of the other two vessels, so far as proved, about $100. The hauling force applied to the Venezuela by the Merritt Company with their cable and the tug Buckley was about three times that of the North America.

Taking all these elements together, the means employed in getting off the ship stand in favor of the Merritt Company as against the North

America, about in the ratio of from two or three to one; so that if the two occupied the same *status* as independent salvors, the Merritt Company should receive about two and one half or three parts to the North America's one. But as the North America came in merely as a subordinate and temporary helper to the Merritt Company, one half the share of an independent salvor, or from one seventh to one eighth, will, I think, be a fair adjustment of the North America's compensation as between themselves.

As for the Tamesi's service, as a lighter towed by the Buckley, $1,500 will, I think, be a very ample allowance. Deducting from the $40,000 the sum to be allowed for the Buckley, and the expenditures of the Merritt Company, the above proportion of the residue, including the $100 expended, will be about $5,000, which I award to the North America. This sum appears to me a liberal award to that vessel, taken as she was for temporary and special use without any obligation on the part of the Merritt Company to share the work with her in any degree, and when the rest of their own forces were expected to be present on the following day. Her actual service in pulling was but for 20 minutes on the 6th, when her hawser broke; and less than two hours on the following midnight tide.

On the other hand, if a reduction of $6,500 in the receipts of the Merritt Company for a brief use of these two vessels seems large, it must be considered that the very fact of their use of that additional force, and the fortunate result and speedy relief to the Venezuela and her cargo without loss, presumably entered to some extent at least into the concession of the liberal allowance of $40,000, which was agreed upon for the whole service.

A decree, with costs, may be entered for the Merritt Company for $33,500; and for the other libelants for $6,500.